95 F.3d 1163
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
DELFOUR, INC., Appellant,
v.
Marvin RUNYON, Postmaster General, United States Postal
Service, Appellee.
 No. 95-1525.
 United States Court of Appeals, Federal Circuit.
 July 9, 1996.
 
 Before ARCHER, Chief Judge, CLEVENGER, and RADER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Delfour, Inc. (Delfour) seeks review of the decision of the United States Postal Service Board of Contract Appeals (the Board), Appeal of Delfour, Inc., PSBCA Nos. 333 & 3731 (March 2, 1995), which denied its claim for contract damages against the United States Postal Service (USPS). We affirm.
 
 
 2
 * On December 18, 1991, the USPS awarded Delfour a contract for general repair work at postal facilities throughout eastern Massachusetts. Numerous parts of the written agreement stated that the parties were entering into an indefinite quantity contract,[1] although the signature page stated: "Initial contract value is $1,000,000.00 Reference Paragraph B.4, Page 3 of 81." That paragraph states:
 
 
 3
 The initial contract value is $1,000,000.00, where the total quantity of work during the term of this contract will not be less than $10,000, nor more than one million dollars ($1,000,000).
 
 
 4
 The minimum quantity of work required by this provision was satisfied because Delfour was awarded twelve work orders totaling over $170,000. Nonetheless, Delfour filed an appeal with the Board contending primarily that the written agreement constituted a fixed-price contract that required the USPS to award it $1,000,000 in work orders. In addition, Delfour claimed entitlement to lost profits for jobs it bid on but was not awarded.
 
 
 5
 The Board denied Delfour's primary claim because it determined that the contract was for an indefinite quantity and that the USPS had satisfied its obligation by awarding Delfour more than the minimum amount of work. The Board also concluded that Delfour is not entitled to lost profits. We review Delfour's appeal of the Board's decision pursuant to 41 U.S.C. § 607(g)(1)(A) (1994).
 
 II
 
 6
 Under an indefinite quantity contract, the buyer agrees to purchase, and the seller agrees to supply, whatever quantity of goods the buyer chooses to purchase from the seller. Mason v. United States, 615 F.2d 1343, 1346 n. 5 (Ct.Cl.), cert. denied, 449 U.S. 830 (1980). Whether this case involves such an indefinite quantity contract is a question of law which we review de novo. See Maintenance Engineers v. United States, 749 F.2d 724, 726 & n. 3 (Fed.Cir.1984).
 
 
 7
 Delfour cites Goldwasser v. United States, 325 F.2d 722 (Ct.Cl.1963) in support of its proposition that the "initial contract value is $1,000,000" language converts the agreement to a fixed-price contract. In addition, Delfour contends that the requirement to post a $100,000 performance bond is inconsistent with an indefinite quantity contract having a $10,000 minimum. We disagree with both of Delfour's arguments.
 
 
 8
 * We address first Delfour's argument that, as in Goldwasser, contradictory language has converted this contract into one for a definite quantity. In Goldwasser, the Department of the Navy awarded Goldwasser a contract to print and deliver a weekly newspaper. Id. at 722. Although the contract was to run from August 1, 1960 to June 30, 1961, the government informed Goldwasser that no further issues would be ordered after October 21, 1960. The government claimed that its action was proper because of an "Indefinite Quantities" clause which only required the government to order a minimum of $100 worth of supplies or services. Goldwasser argued that the agreement was instead a requirements contract because "Price Schedule A" specifically required the printing of fifty issues over the course of twelve months. Id. at 723.
 
 
 9
 The United States Court of Claims explained that the "[t]he two ... clauses are directly contradictory; one or the other must fall." Id. Based on notions of contra proferentum, the court decided that the more specific "Price Schedule A" provision should prevail over the more general "Indefinite Quantities" clause. Id. at 723-25.
 
 
 10
 Unlike the situation in Goldwasser, the present case does not involve irreconcilable clauses. The solicitation, the contract, and the price schedule each state numerous times that the contract is for an indefinite quantity. Delfour contends that these myriad statements are contradicted by two statements that the "initial contract value is $1,000,000.00." There are two responses to Delfour's argument. First, given the multitude of statements in this case describing the contract as one for an indefinite quantity, these two isolated statements are insufficient to create the degree of contradiction required to trigger Goldwasser.
 
 
 11
 Second, although the parties have not offered a definition of "initial contract value," we are guided by the Board's interpretation of similar language in Golden West Builders, PSB CA No. 3378, 93-3 BCA (CCH) p 26,195 (1993). In that case, the USPS awarded two contracts that each stated: "[t]he initial contract value is $250,000.00 where the total quantity of work ordered during the term of this contract will not be less than $10,000 nor more than one million dollars ($1,000,000)."[2] Id. at 130,409. The Board treated this provision as creating an indefinite quantity contract. Moreover, the Board explained that based on these contracts, the contractor "estimated it would have to perform about $500,000 of work under the two contracts, but had to be prepared for at least $2,000,000." Id. Golden West, therefore, indicates that "initial contract value" merely represents an estimate designed to aid the contractor in planning its affairs. Because such an estimate does not contradict the indefinite quantity language in the present case, Goldwasser is inapposite.
 
 B
 
 12
 We also reject Delfour's argument that the contract is for a definite quantity because the requirement to post a $100,000 performance bond is inconsistent with an indefinite quantity contract having a $10,000 minimum. Although the contract provided for a minimum award of $10,000, the government could rightfully expect that additional work might be awarded to Delfour and likely chose $100,000 as the expected value of the award; in fact, Delfour performed work exceeding $170,000. Moreover, a $100,000 bond is equally inconsistent with Delfour's claim of a $1,000,000 contract as it is with a $10,000 contract. As a result, we agree with the Board that the agreement contemplates an indefinite quantity contract with a $10,000 minimum.
 
 III
 
 13
 In addition to its primary argument that the contract is for a definite quantity, Delfour also argues that it is entitled to lost profits for $277,000 worth of jobs it bid on but was not awarded. First, Delfour contends that the USPS was obligated to award work orders to Delfour whenever it requested that Delfour submit a proposal. Second, Delfour contends that it is entitled to the lost profits under the doctrine of promissory estoppel. We disagree with each argument.
 
 
 14
 Delfour cites no contractual provision in support of its first argument. In contrast, the USPS notes that paragraph C.13.a explains that no work should be performed until a Notice to Proceed has been issued and that any work performed prior to receipt of this notice will be at the contractor's own risk. This provision clearly implies that some proposals may not be approved. Moreover, the USPS submitted an affidavit that Delfour's approach would be impractical because changes such as budgetary freezes can preclude issuance of a Notice to Proceed even after a proposal is received. Therefore, this argument does not entitle Delfour to lost profits on the $277,000 worth of jobs on which it bid but was not awarded work orders.
 
 
 15
 Next, Delfour contends that it is entitled to the lost profits on its un-awarded proposals under the doctrine of promissory estoppel. In response, the USPS argues in its brief that the doctrine of promissory estoppel cannot be asserted against the government. We need not resolve that issue, however, because we conclude that even if the doctrine applies, Delfour has not satisfied the requisite elements. Most importantly, Delfour has not offered any concrete evidence that it relied on a promise in such a manner as to change its position for the worse. See Law Mathematics & Technology, Inc. v. United States, 779 F.2d 675, 678-79 (Fed.Cir.1985), cert. denied, 476 U.S. 1106 (1986). Instead, Delfour makes only a conclusory assertion that it has foregone other work opportunities in reliance on promises made by the USPS. Therefore, Delfour is not entitled to lost profits on the $277,000 worth of un-awarded jobs on the basis of promissory estoppel.
 
 IV
 
 16
 In conclusion, we agree with the Board that an indefinite quantity contract existed between Delfour and the USPS and that Delfour is not entitled to lost profits based on its remaining arguments. Accordingly, we affirm the Board's decision.
 
 
 
 [1]
 For example, the solicitation stated "[t]he indefinite quantity contract resulting from this solicitation will include services for site work, concrete, masonry...." (emphasis added). This same language appears on the first page of the contract award, and numerous provisions within the contract explicitly state that they relate to an indefinite quantity contract (e.g., paras. B.4, C.11, C.12, C.13, C.14, C.15, G.32). Even the price schedule is entitled, in large bold letters, "U.S. POSTAL SERVICE INDEFINITE QUANTITY CONTRACT/CONSTRUCTION UNIT PRICE SCHEDULE."
 
 
 [2]
 This standard clause (Clause FB-248), which appears in both the Golden West and the present case, is used by the USPS for indefinite quantity repair and alteration contracts