**THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**The Arapaho Indian Tribe of the Wind River Reservation, Wyoming, Plaintiff,**

v.

**The United States, Defendant.**

**Nos. 458–79 L, 459–79 L.**

United States Court of Federal Claims.

Nov. 24, 2003.

---

Steven D. Gordon, Washington, DC, for the Shoshone Indian Tribe. Lynn E. Calkins and Maria Whitehorn Votsch, Washington, DC, John C. Schumacher, Fort Washakie, WY, and Jerome L. Levine and James K. Kawahara, Los Angeles, CA, of counsel.

Richard M. Berley, Seattle, WA, for the Arapaho Indian Tribe. Brian W. Chestnut, Seattle, WA, of counsel.

Elsie B. Kappler, with whom was Thomas L. Sansonetti, Assistant Attorney General, U.S. Department of Justice, Washington, DC, for defendant.

*OPINION*

HEWITT, Judge.

Before the court is United States' Motion In Limine to Exclude Testimony and Evidence Regarding Certain Claims for Breach of Trust After 1988 (Motion In Limine). For the reasons discussed below, defendant's Motion in Limine is DENIED.

## I. Background

This case was filed in 1979 and has been divided into four phases for adjudication.[1] The Parties' Joint Submission of Proposals for Segmentation of Issues and Scheduling of Trials filed May 21, 2001. The current phase involves plaintiffs' claims of breach of fiduciary duty by the government in the collection, management and payment of royalties. Tribes' Brief Identifying the Issues to be Resolved at Trial of Oil and Gas Phase One (Pls.' Issues Brief) at 2. In preparation for trial on these issues, defendant filed the Motion In Limine that is the subject of this opinion.

Defendant bases its Motion In Limine on a May 2, 1997 letter sent from plaintiffs to defendant. Memorandum in Support of United States' Motion In Limine to Exclude Testimony and Evidence Regarding Certain Claims for Breach of Trust After 1988 (Def.'s Mem.) at 1–2. In this letter, plaintiffs wrote, "For the periods and leases listed below, the Tribes do not intend to seek damages for breach of trust with respect to management of oil and gas." Letter from Schumacher and Berley to Gould of 5/2/97, *in* Def.'s Mem. Ex. C Att. 1 (1997 Letter). The periods and leases listed in the 1997 letter are at issue in this motion. *See* Def.'s Mem. at 2 n. 1. Defendant contends that "[p]laintiffs made an express and formal disclaimer of their

intention to seek relief on certain claims, and the United States has detrimentally relied on those representations." *Id.* at 8.

## II. Discussion

### A. Analytic Framework

Defendant does not identify the legal doctrine upon which it bases its Motion In Limine. However, defendant's allegation of detrimental reliance, *see id.* (stating that defendant "detrimentally relied" on the 1997 Letter), suggests that defendant's motion is based on either a promissory estoppel theory or an equitable estoppel theory.

Promissory estoppel and equitable estoppel may be distinguished by the nature of the representation upon which a party claims to have relied. "In the typical equitable estoppel case, the defendant had represented an *existing or past fact* to the plaintiff, who reasonably and in ignorance of the truth relied upon the representation to his detriment." 4 Richard A. Lord, *Williston on Contracts* § 8:4, at 38 (4th ed.1992) (emphasis added). Because "equitable estoppel necessarily preclude[d] reliance on representations of *present or future intention* ... the law of promissory estoppel developed." *Id.* § 8:3, at 37–38 (emphasis added). When the theories are distinguished in this way, defendant would be understood to be relying on a promissory estoppel theory because defendant claims to have relied on a statement of intention rather than a statement of "existing or past fact." *See* Def.'s Mem. at 8 ("Plaintiffs made an express and formal disclaimer of their intention to seek relief on certain claims ...."); *see also* Letter from Schumacher and Berley to Gould of 5/2/97, *in* Def.'s Mem. Ex. C Att. 1 ("For the periods and leases listed below, the Tribes do not

---

1. The facts outlined here include only those relevant to the current issues before the court.
Additional historical background can be found in the court's earlier opinions. *See Shoshone Indian Tribe of the Wind River Reservation v. United States,* 58 Fed.Cl. 77 (2003) (granting in part and denying in part defendant's Motion to Dismiss and Motion for Summary Judgment in first phase of briefing); *Shoshone Indian Tribe of the Wind River Reservation v. United States,* 56 Fed. Cl. 639 (2003) (same); *Shoshone Indian Tribe of the Wind River Reservation v. United States,* 52

Fed.Cl. 614 (2002) (deciding pre-trial motions regarding claims for management of the Tribes' sand and gravel); *Shoshone Indian Tribe of the Wind River Reservation v. United States,* 51 Fed. Cl. 60 (2001) (deciding statute of limitations issue), *appeal docketed,* Nos. 03–5036 & 03–5037 (Fed.Cir. Dec. 13, 2002); *see also Shoshone Tribe of Indians v. United States,* 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937) (providing history of the joint occupancy by the Tribes of the Wind River Reservation).

intend to seek damages for breach of trust with respect to management of oil and gas.").

Promissory and equitable estoppel may also be distinguished by the context in which the claim of estoppel is deployed:

"[P]romissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. *Promissory estoppel is a sword, and equitable estoppel is a shield.*"

*Biagioli v. United States,* 2 Cl.Ct. 304, 307 (1983) (quoting *Jablon v. United States,* 657 F.2d 1064, 1068 (9th Cir.1981)). When the theories are distinguished in this way, defendant would be understood to be relying on an equitable estoppel theory because defendant is attempting here to prevent plaintiffs from asserting a claim they otherwise would have.

■ While defendant does not suggest that its argument should be analyzed within the trust context, the court notes that the law of trusts provides another relevant framework within which to analyze defendant's arguments because there is an "undisputed . . . general trust relationship between the United States and the Indian people," *United States v. Mitchell,* 463 U.S. 206, 225, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. Navajo Nation,* 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (quoting the same language from *Mitchell*). The trust concepts of release and estoppel by misrepresentation appear to the court to be potentially applicable to defendant's motion. *See* George T. Bogert, *Trusts* 628–29 (6th ed.1987) (discussing these concepts). For a release by a beneficiary to be effective, the following conditions must be met:

the beneficiary [must be] furnished by the trustee or third party involved with full information as to the relevant facts, the rights of the beneficiary, and as to the legal effect of the transaction. . . . [I]f there are misrepresentations of facts or law by the trustee, or concealment when there is a duty to speak, the transaction is not binding on the beneficiary.

*Id.* at 628. The threshold question under a release analysis is whether defendant provided plaintiffs, in May of 1997, with the full information relevant to plaintiffs' stated intent not to pursue the claims listed in the 1997 letter. Plaintiffs contend that defendant had knowledge in May of 1997 of claims that "oil companies had deliberately underpaid royalties due for oil produced on federal and Indian leases for many years." Tribes' Opposition to United States' Motion In Limine to Exclude Testimony and Evidence Regarding Certain Claims for Breach of Trust After 1988 (Pls.' Opp.) at 3–4; *see also id.* (stating that the government had been investigating underpayment claims and knew they were serious). The clear implication of plaintiffs' argument is that, had they known in May of 1997 what the government knew, they would not have communicated an intent not to pursue the claims listed in the 1997 Letter. *See id.* at 3–4 (attributing the statement in the 1997 Letter to plaintiffs' lack of knowledge).

Defendant argues that plaintiffs "had knowledge of the issues involved in the valuation of crude oil well before agreeing not to pursue claims for breach of trust." Def.'s Mem. at 4. Even if this were true, however, it is not enough to discharge the government's trust responsibility. Defendant had an affirmative duty to provide plaintiffs with full information. Bogert, *supra,* at 628. Plaintiffs are correct that "[n]owhere does the Government allege that it had advised the Tribes that there was evidence that major oil companies, including lessees on the Reservation, had deliberately undervalued their oil for many years. . . . These are highly material facts that the Government did not disclose to the Tribes." Pls.' Opp. at 10–11. Because defendant did not provide plaintiffs with the full information plaintiffs would have needed before releasing the claims listed in the 1997 letter, defendant could not prevail on its Motion in Limine under a release theory.

A trust beneficiary can be estopped from asserting claims "[i]f he represents expressly or impliedly . . . that no breach has occurred, and the person to whom the representation is made justifiably acts in reliance on the statement in such a way that he cannot retreat without damage." Bogert, *supra,* at 629.

Because the foregoing elements of estoppel by misrepresentation in the trust context overlap in all significant respects with the elements of promissory estoppel and equitable estoppel, the court now considers whether either theory supports defendant's motion.

## B. Promissory Estoppel

■ Promissory estoppel involves "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance ...." Restatement (Second) of Contracts § 90(1) (1981). This promise "is binding if injustice can be avoided only by enforcement of the promise." *Id.* In order to prevail on a claim of promissory estoppel, a party

> must prove, first, that there was a promise or representation made, second, that the promise or representation was relied upon by the party asserting the estoppel in such a manner as to change his position for the worse, and, third, that the promisee's reliance was reasonable and should have been reasonably expected by the promisor.

*Law Mathematics & Tech., Inc. v. United States,* 779 F.2d 675, 678 (Fed.Cir.1985). Once these elements are met, the promise will only be binding if justice so requires. *See* Restatement (Second) of Contracts § 90(1).

■ This court does not have jurisdiction to hear contract claims based on promissory estoppel. *See LaMirage, Inc. v. United States,* 44 Fed.Cl. 192, 200 (1999) ("It is well settled that this court is without jurisdiction to entertain claims arising from a contract, based on the theory of promissory estoppel, or based on contracts implied-in-law."). In the cases finding lack of jurisdiction, a private litigant pursues a claim in this court by asserting that a contract between the government and the private litigant was created by promissory estoppel. *See, e.g., Schuhl v. United States,* 3 Cl.Ct. 207, 210–11 (1983). By contrast, defendant here is invoking promissory estoppel defensively to hold plaintiffs to a "promise" not to pursue certain claims in a suit which is already properly before this court.

■ The first element of promissory estoppel is the existence of a promise or representation. The Restatement defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1). Plaintiffs' statement that plaintiffs "d[id] not intend to seek damages for breach of trust with respect to management of oil and gas" for certain listed claims, Letter from Schumacher and Berley to Gould of 5/2/97, *in* Def.'s Mem. Ex. C Att. 1, is a "manifestation of intention to ... refrain from acting in a specified way," Restatement (Second) of Contracts § 2(1). However, defendant was not justified in understanding that plaintiffs had committed not to pursue the claims listed in the 1997 letter. In 1996, just a year before plaintiffs sent the 1997 Letter, the parties entered into-and filed with the court-a Joint Status Report on Discovery in which they stated that "Plaintiffs advised Defendant that they waive any claims and release the United States from any liability that arises from the leases, time periods, and the issues listed below." February, 1996 Joint Status Report on Discovery (1996 Joint Status Report) ¶ 2. The court believes that a formal statement to the court could justify defendant's understanding that plaintiffs released defendant from the claims listed in the 1996 Joint Status Report. The 1997 Letter, by contrast, was never submitted to the court, and defendant does not allege that it communicated to plaintiffs any intention by defendant to rely on it. In these circumstances, the court does not find that defendant was justified in believing that plaintiffs had committed not to pursue the claims listed in the 1997 Letter. Because such an understanding of the 1997 Letter was unjustified, the 1997 Letter cannot constitute a "promise" as required by the Restatement.

Nor was the statement in the 1997 Letter a "representation." *See Law Mathematics & Tech., Inc.,* 779 F.2d at 678 (stating that the first prong of a promissory estoppel claim requires that there be a promise or representation). A representation is "[a] presentation of fact ... made to induce someone to act."

*Black's Law Dictionary* 1303 (7th ed.1999). The statement in the 1997 Letter was one of intent, not of fact. Thus, the statement in the 1997 Letter was not a representation. Even if the court were to interpret "representation" in its more colloquial sense, *see The American Heritage Dictionary of the English Language* 1480 (4th ed.2000) (defining "representation" as "[a]n account or statement"), and find that the statement in the 1997 Letter was a representation, defendant has not shown the remaining elements of promissory estoppel.

As to the second element of promissory estoppel, detrimental reliance, defendant has shown none. "To prove detrimental reliance, [a party] must demonstrate that its action or forbearance amounted to a substantial change of position.... [A] speculative claim of damage does not amount to a 'substantial change of position' so as to prove detrimental reliance within the meaning of the doctrine of promissory estoppel." *Law Mathematics & Tech., Inc.*, 779 F.2d at 678–79.

The detriment the government alleges that it suffered is that it was "precluded ... from adequately preparing a defense" to the claims listed in the 1997 Letter and that "discovery on the claims at issue in this phase of the litigation has now been closed." Def.'s Mem. at 8. Plaintiffs argue that defendant has not specifically shown how it changed its position for the worse in reliance on the 1997 Letter. *See* Pls.' Opp. at 15 (arguing that "[t]he Government fails to specify how it relied on the 1997 Letter, how it has been prejudiced, or what actions it has been precluded from taking"). In fact, plaintiffs assert facts that support an absence of detrimental reliance. Plaintiffs state that "the Government compiled data for all of the lease-months at issue in the 1997 Letter in its ITAD database," that "[t]he Government

proceeded to obtain expert opinions that addressed the lease-months covered by the 1997 Letter," and that "[o]ver two months ago, the Government's accounting experts reviewed and computed the amount of potential damages that tie to these lease-months." *Id.*[2]

The court agrees with plaintiffs that defendant's claim of damage is "speculative" and that defendant has not demonstrated that it underwent a "substantial change of position" in reliance on the 1997 Letter. *See Law Mathematics & Tech., Inc.*, 779 F.2d at 678–79. Defendant has not shown how it has been precluded from preparing a defense. Defendant has not introduced evidence that it did not pursue discovery on the claims in the 1997 Letter because of plaintiffs' statement in that letter, or that it does not have any information regarding the claims in the 1997 Letter, or that information not in its possession would be required to defend against these claims. Defendant has not shown that it changed its position for the worse in reliance on plaintiffs' statement in the 1997 Letter.

In the absence of evidence that defendant in fact relied on plaintiffs' statement, the third element of a promissory estoppel claim—that reliance must be reasonable or expected—is *a fortiori* not proven. However, even if evidence of reliance existed, defendant's reliance would not be reasonable or expected. The statement in the 1997 Letter was an informal statement of intention transmitted from one party to another, not agreed to, and not placed on the record in this litigation. Eliminating claims from litigation is a significant event. It is reasonable to expect that, when parties wish to eliminate claims from litigation, they will do so in a formally binding manner, such as through joint stipulations.[3]

---

2. Although plaintiffs do not cite to any documentary evidence to back up their assertions, defendant has not challenged plaintiffs' statements.

3. Pursuant to this court's Order of November 8, 2002, plaintiffs formally identified the time frames at issue in this phase of litigation in Tribes' Brief Identifying the Issues to be Resolved at Trial of Oil and Gas Phase One, filed on January 3, 2003. For each of their claims, plaintiffs stated that they sought damages through

December 31, 2000, *see* Pls.' Issues Brief at 14, 15, 23, 27, 31, a period which encompasses the claims listed in the 1997 Letter. The court does not agree that an unfiled letter written before the formalization of the time frames at issue in this phase of the litigation should supersede the Issues Brief filed pursuant to the formal pretrial scheduling order.

548

## C. Equitable Estoppel

■ The elements of equitable estoppel, sometimes viewed as a "shield" to bar a claim or defense, *see Biagioli,* 2 Cl.Ct. at 307 ("[E]quitable estoppel is a shield." (emphasis omitted)), have been set out as follows:

> The elements of equitable estoppel are (1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted.

*Lincoln Logs Ltd. v. Lincoln Pre–Cut Log Homes, Inc.,* 971 F.2d 732, 734 (Fed.Cir. 1992); *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992) (stating that this formulation of the three elements of equitable estoppel "reflects a reasonable and fairly complete distillation from the case law").[4]

■ The alleged misleading conduct here is plaintiffs' statement that they would not pursue the claims listed in the 1997 letter. *See* Letter from Schumacher and Berley to Gould of 5/2/97, *in* Def.'s Mem. Ex. C Att. 1.

Because the 1997 Letter was not incorporated into a formal statement in a document filed with the court, it would not be reasonable for defendant to infer from the 1997 Letter that plaintiffs had permanently and irrevocably committed not to pursue the listed claims. In addition, there is no evidence that defendant relied on plaintiffs' statement in the 1997 Letter. Because there is no evidence of reliance, defendant could not

have suffered material prejudice. *See Lincoln Logs Ltd.,* 971 F.2d at 734 (requiring material prejudice "due to reliance" to find equitable estoppel).

The facts of this case are similar in some respects to those in *Hercules Inc. v. United States,* 49 Fed.Cl. 80, 87–89 (2001) (finding no equitable estoppel). In *Hercules,* the government asserted that, in making its decision not to appeal a case, it relied on a statement in an unfiled letter plaintiff sent to the government. *Id.* at 87. In *Hercules,* as here, the government did not communicate to plaintiff its intention to rely on the letter, *id.* at 88–89, and there was an absence of persuasive evidence that the government had in fact relied on the letter, *id.* at 85. Here, also, there is an absence of evidence that the government relied upon and was thereby materially prejudiced by the 1997 Letter.

## III. Conclusion

Because defendant has not proven that either promissory estoppel or equitable estoppel exists in this matter, there is no injustice that must be avoided by enforcing plaintiffs' statement in the 1997 Letter. For the foregoing reasons, United States' Motion In Limine to Exclude Testimony and Evidence Regarding Certain Claims for Breach of Trust After 1988 is DENIED.

IT IS SO ORDERED.

---

4. An alternative formulation of the test for promissory estoppel provides that the following elements must be established:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Emeco Indus., Inc. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973). This test has often been applied in cases where a private litigant attempts to assert a claim of promissory estoppel against the government. *See, e.g., JANA, Inc. v. United States,* 936 F.2d 1265, 1270

(Fed.Cir.1991) (stating that this is the test to apply when estoppel is asserted against the government in a contract dispute); *Am. Elec. Labs., Inc. v. United States,* 774 F.2d 1110, 1113–16 (Fed.Cir.1985) (applying test to a case where plaintiff asserted estoppel against the government); *Doe v. United States,* 48 Fed.Cl. 495, 505 (2000) (same); *Knaub v. United States,* 22 Cl.Ct. 268, 276–77 (1991) (same). *But see Hercules Inc. v. United States,* 49 Fed.Cl. 80, 88–89 (2001) (applying the *Emeco* test to a case where the government claimed equitable estoppel against a private plaintiff). Even if the *Emeco* test were applicable here, defendant has not provided proof that any element of the test exists in this case.