**Joanne K. PETRINI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 697–88C.**

United States Claims Court.

Dec. 13, 1989.

---

Eileen Paez, Albuquerque, N.M., for plaintiff.

Donald E. Kinner, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for. defendant. Arthur Arguedas, Office of the Field Sol., Dept. of the Interior, Sante Fe, N.M., of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction[1] or, alternatively, for partial summary judgment.[2] After completion of briefing, but before argument, the case was transferred to this judge.

## FACTS

The following material facts are undisputed. The United States Department of the Interior through its Bureau of Indian Affairs (the "BIA") initially hired Joanne Kathleen Petrini ("plaintiff") on August 25, 1980, as a special education teacher at the Chi chil tah Boarding School. Thereafter, the BIA rehired plaintiff as a special education teacher at the San Felipe Elementary School ("San Felipe") in August 1983. She was hired pursuant to Title XI of Pub.L. No. 95–561, 92 Stat. 2316 (Nov. 1, 1978), codified at 25 U.S.C. §§ 2001–2019 (1982), as a contract employee within the definition of 25 C.F.R. §§ 38.2(h)(2)(i), 38.-6(a) (1980). *See* 25 U.S.C. § 2011(a)(1). A

---

1. The motion to dismiss was mooted by plaintiff's concession in her response that she did not pursue in the Claims Court certain claims in the complaint that was transferred by a federal district court.

2. Defendant seeks summary judgment complete as to plaintiff's contract claims. The case was briefed pursuant to RUSCC 56.

contract employee is subject to appointment only with the concurrence of the San Felipe Pueblo School Board. The school principal, however, has the authority to appeal administratively any school board hiring or non-hiring decision. *See* 25 U.S.C. §§ 2011(d)(1)(B), (d)(2)(A). The BIA rehired plaintiff under a new contract in each of the following three school years and rated her at the highest or second highest performance level out of a range of five levels.

Prior to retaining plaintiff at San Felipe, the BIA in 1975 hired Ellen Weiland as a special education teacher. The school principal subsequently reassigned Ms. Weiland as a first-grade teacher in 1978. The BIA compels certification of teachers at BIA schools, if a state so requires, as a condition for appointment. 25 C.F.R. § 38.4. Although Ms. Weiland was certified only as a special education teacher and was not certified to teach an elementary class, her reassignment as a first-grade teacher took place prior to the enactment of Pub.L. No. 95–561. At the time of her reassignment, no other requirements existed for teacher certification.

The North Central Association accredited San Felipe in 1983. The Association noted as a deficiency in its evaluation of the school that Ms. Weiland was teaching an elementary class for which she was not certified. Ms. Weiland, however, continued to teach elementary classes through the 1986–1987 school year.

In early 1987 San Felipe Pueblo School Board members began preparations for the Association's on-site visit and reaccreditation scheduled for April 1988. Accordingly, the board conducted a meeting on March 30, 1987. Richard L. Garcia, BIA's employee relations specialist for Albuquerque, New Mexico, advised the board that since Pub.L. No. 95–561 mandated teacher certification, Ms. Weiland was required to return to the special education position for which she was certified. Thereafter, in its March 30, 1987 meeting, the board determined to use Ms. Weiland as the San Felipe special education teacher during the 1987–88 school year because she officially still held the position, was a good teacher, and had been with the school for more than ten years. The board then voted on March 30, 1987, not to renew plaintiff's contract.

Prior to the March 30 board meeting, Dorothy M. Howard, the acting principal, recommended in a memorandum dated March 6, 1987, that the board renew plaintiff's contract for the 1987–1988 school year. Ms. Howard based her recommendation, required on a special timetable set by 25 C.F.R. § 38.6(e), upon plaintiff's performance evaluation and proper state certification.

On March 9, 1987, the board approved Ms. Howard's recommendations, while reserving the right not to sign any individual contract pending a review of each employee's performance evaluation. Ms. Howard on March 17, 1987, sent a memorandum to plaintiff, which stated:

> You are hereby notified that the San Felipe Elementary School Administrators and School Board are offering you a contract for school year 1987–88.
>
> Please submit your written reply ... within 14 days.

The 14-day period was to expire on March 31, 1987. On March 31, 1987, however, Edward T. Doler, the school principal, in whose stead Ms. Howard had been serving from October 13, 1986, until March 23, 1987, met with plaintiff to explain the board's action taken at the March 30 board meeting not to renew her contract.[3] Plaintiff acknowledged that this discussion took place. Affidavit of Joanne K. Petrini, Mar. 31, 1989, ¶ 6.

Plaintiff checked the box on the attachment to the March 17 memorandum reading, "I accept my contract for the school

---

**3.** In addition, by letter dated April 2, 1987, Mr. Doler again informed plaintiff of the board's decision and the reasons therefor. Plaintiff acknowledged receipt of that letter on April 3, 1987. On the same date, Ms. Howard wrote plaintiff a letter to rescind the March 17, 1987 "offer," which plaintiff did not receive until April 13, 1987. These actions to effect a revocation of the notification of intent to renew took place after plaintiff's purported acceptance on April 2, 1987, and thus would have been ineffective had Mr. Doler not revoked the "offer" orally in the presence of plaintiff on March 31, 1987, before she accepted it on April 2.

year 1987–88" and on April 2 returned it to Mr. Doler. Plaintiff's "acceptance" took place two days after the notification of "offer" expired.

The expiration date of plaintiff's contract for the 1986–1987 school year was June 12, 1987. It is undisputed that Ms. Weiland did not take the position created by the decision not to renew plaintiff's contract. Thereafter, the board advertised the special education vacancy created by Ms. Weiland's resignation for the 1987–1988 school year.

Shortly before the close of the vacancy announcement, Mr. Doler telephoned plaintiff to ask if she would like to interview for the position. Plaintiff did not attend the interview, having responded through her attorney that she requested reinstatement. The court accepts the proffer of counsel for plaintiff that as of that date plaintiff faced competition from a minority preference applicant that would have rendered plaintiff's application futile. The board subsequently hired another special education teacher for the 1987–1988 school year.

### DISCUSSION

After some issues raised by defendant were mooted by the briefs, the issues for decision are 1) whether the BIA employed plaintiff under a continuous contract from August 25, 1980, until her termination on June 12, 1987; 2) whether a contract between plaintiff and defendant existed for the 1987–1988 school year; and 3) whether the BIA violated its own regulations in declining to renew plaintiff's contract.

■ 1. Plaintiff asserts that an on-going contract with the BIA existed, subdivided into separate time periods for school years with different schools. Plaintiff further contends that these contracts were continuously subject to renewal and did not terminate at the end of each year. Defendant denies that the BIA continuously employed plaintiff for seven years, countering that each employment contract entered into stated on its face that plaintiff's employment was for a specified period. It is defendant's position that the regulation governing plaintiff's appointment mandates appointment for a limited time, not to exceed one school year. The court agrees.

25 C.F.R. § 38.3(b) provides:

Positions established for regular school operations will be restricted to school year or program duration. Particular care shall be taken to insure that year long positions are clearly required and involve essential 12 month assignments.

In addition, 25 C.F.R. § 38.6(d) requires the BIA to issue employment contracts each year for employment in contract education positions at the Agency and school levels. 62 B.I.A.M. 11.4 (Dec. 20, 1982), the applicable Bureau of Interior Agency Manual provision, stipulated that

[t]his contract may be terminated without notice at the expiration of the appointment or upon appointment of a fully qualified applicant for the position. Such termination is not grievable.

As required by the regulations, the BIA entered into a new employment contract with plaintiff each year. The BIA did not employ plaintiff under an on-going contract from August 1980 to June 1987. Rather, plaintiff's services were retained under separate and distinct employment contracts, none exceeding a 12–month period. Furthermore, each employment contract duly noted an expiration date, negating any implication of continuous employment. Paragraph 6 of plaintiff's contract for the 1986–1987 school year read:

This contract may be [terminated] by the OIEP [Office of Indian Education Programs] during the school year and prior to its expiration date in accordance with the rules and regulations of the OIEP as set forth in 62 BIAM. Failure to renew this contract does not constitute termination for cause by OIEP or for other reasons.

This case is similar to *Mittapalli v. United States*, 229 Ct.Cl. 479, 481 (1981), in which plaintiff received a three-year appointment. Upon completion of his three-year term, plaintiff's position automatically terminated and he ceased to be an employ-

ee of the Government. Plaintiff's contract for the 1986–1987 school year terminated on June 12, 1987. Contrary to plaintiff's assertions, the BIA provisions do not provide for automatic contract renewal. Rather, under the procedures specified in 25 C.F.R. § 38.6(e); 62 B.I.A.M. 11.4.3, the school supervisor notifies the appropriate school board which education contracts are recommended for renewal and which are not. If the board disagrees with the recommendations, the board must submit, within 25 days, a formal, written certification of its determination to the school supervisor. If the board submits its determination within the 25 days, the school supervisor implements the determination through issuance of the required 60–day notice of renewal or non-renewal. If a contract is to be renewed, the employee must agree in writing, within 14 calendar days of the date of the notice, to serve for the next school year pursuant to 25 C.F.R. § 38.10(c), and 62 B.I.A.M. 11.4.3.

██ 2. In the case at bar, the school board approved Ms. Howard's recommendation to renew plaintiff's contract and sent the requisite notice on March 17. The notice stated that a written reply was required within 14 calendar days. Plaintiff, however, did not respond until April 2, 1987, two days after the offer expired. Her attempted acceptance did not comply with 25 C.F.R. § 38.10(c) and therefore was ineffective.

Plaintiff nonetheless maintains that a contract for the 1987–1988 existed. Plaintiff contends that the board extended her an offer that she accepted. She further contends that she cannot be bound by Ms. Howard's private understanding that the offer was only an intent to offer. Defendant argues that neither the board nor Ms. Howard had authority to extend an offer to contract to plaintiff. According to defendant, the March 17, 1987 notice merely evidenced an intent to renew the employment, rather than an understanding that the job was hers, because the governing regulations contemplate that a contract is entered into only after the teacher acknowledges notification of the contract renewal and agrees in writing to serve for the next school year, 25 C.F.R. §§ 38.6(e), 38.10(c), and further contemplate a signed writing to manifest both offer and acceptance. See 25 C.F.R. § 38.2(k). In order to rule on defendant's motion, it is not necessary to discern any legal significance between acceptance of a letter of intent and signature on the contract drawn up to memorialize the offer. It is defendant's position that, even if the board extended an offer, it clearly and unequivocally was revoked by both Mr. Doler before plaintiff's acceptance on April 2, 1987. Defendant further claims that, regardless of the revocation, the offer expired by its terms on March 31, 1987.

25 C.F.R. § 38.10(c) provides, in pertinent part:

> If an individual's contract is to be renewed, the individual must agree in writing to serve for the next school year. This agreement must be made within fourteen (14) calendar days of the date of notice in order to complete the contract renewal. . . .

No contract ever came into being for the 1987–1988 school year. Undeniably, plaintiff failed to make a timely acceptance before the offer expired on March 31, 1987.

██ Three elements must be demonstrated to establish the existence of a contract with the Government: 1) a mutual intent to contract; 2) lack of ambiguity in offer and acceptance; and 3) authority to contract on the part of the government agent. *Russell Corp. v. United States*, 210 Ct.Cl. 596, 609, 537 F.2d 474, 481–82 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Pacific Gas & Elec. Co. v. United States*, 3 Cl.Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984). Plaintiff's claim also fails since no mutual intent existed. This is evidenced by the fact that Mr. Doler revoked the offer prior to the purported April 2 acceptance. On March 30, 1987, the school board determined that plaintiff must be notified that her services would no longer be needed. The board did not condition plaintiff's termination upon Ms. Wieland's acceptance of her former position as the San Felipe spe-

cial education teacher. Plaintiff proceeds on the mistaken assumption that the board specifically did not order the school officials to terminate her, but, rather, authorized the officials only to determine Ms. Wieland's preference. On March 31, 1987, Mr. Doler met with plaintiff and communicated the board's intent not to renew her contract.

Alternatively, plaintiff argues an implied-in-fact contract. A contract implied-in-fact requires a showing of the same mutual intent and lack of ambiguity as that required for an express contract. *Pacific Gas & Elec.*, 3 Cl.Ct. at 338–39. The acceptance of an offer must be manifested by conduct that indicates assent to the proposed bargain. In addition, the officer whose conduct is relied upon must have had actual authority to bind the Government. Extensive negotiations in which parties demonstrate hope and intent to reach an agreement are not sufficient in themselves to establish an implied-in-fact contract. Moreover, in negotiations wherein the parties contemplate that their contractual relationship would arise by means of a written agreement, no contract can be implied. In *American General Leasing, Inc. v. United States*, 218 Ct.Cl. 367, 373, 587 F.2d 54, 58 (1978), the court held that the applicable procurement regulations required government contracts to be in writing in order to be binding upon the parties. Accordingly, the parties envisioned a formal writing as the only document which could establish a binding contractive relationship between them. Thus, no implied-in-fact contract came into being.

The applicable regulations in this case require an employment contract to be in writing. In addition to 25 C.F.R. § 38.10(c), section 38.2(k) defines an employment contract as "a *signed agreement* executed by and between the Bureau and the individual employee hired or converted under this part...." (Emphasis added.) No contract therefore can be implied.

Even assuming, *arguendo*, that the parties did not envision a formal writing as the only manifestation that would establish a binding contractual relationship, plaintiff's implied-in-fact contract claim would still fail due to lack of mutuality.

3. Plaintiff further charges that the BIA failed to follow the procedures of both the regulations and the B.I.A.M. concerning employee discipline and discharge or reduction in force. Plaintiff asserts that the BIA did not provide her a review of the non-renewal of her contract, an opportunity to pursue her termination through grievance procedures, or out-placement services after her termination, thereby violating its own regulations. Defendant counters that plaintiff has based her claim upon B.I.A.M. provisions that are two years out of date and have no application to this case. Defendant is correct on this point.

Plaintiff mistakenly is of the view that the governing regulations required the BIA to proceed according to 25 C.F.R. § 38.7(d). The procedural steps outlined in this regulation, however, apply only to discharges for cause, yet 25 C.F.R. § 38.10(c) specifically states that nonrenewal of a contract will not have the effect of a discharge for cause. 62 B.I.A.M. 11.4.3 is to the same effect: "Failure of the employee to respond within the fourteen (14) days shall be deemed a formal resignation." This is precisely the situation in the present case: Plaintiff's contract for the 1986–1987 school year duly expired, and the board chose not to renew her contract.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and the Clerk of the Court shall enter judgment dismissing the complaint.

IT IS SO ORDERED.

No costs.