Rena GOTTLIEB, et al.

v.

**TROPICANA HOTEL AND CASINO**

v.

**Redland Insurance Co., et al.**

**No. CIV.A.99–6613.**

United States District Court,
E.D. Pennsylvania.

July 5, 2000.

Alan M. Feldman, Feldman, Shepherd, Wohlgelernter, Thomas W. Sheridan, Thomas W. Sheridan, Philadelphia, PA, for Plaintiffs.

Roberto A. Rivera–Soto, Fox, Rothschild, O'Brien & Frankel, Heather D. Disque, Fox Rothschild O'Brien & Frankel, Daniel G. Lyons, Fox, Rothschild, O'Brien & Frankel, LLP, Kathleen D. Wilkinson, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, PA, for Defendants.

## MEMORANDUM

BARTLE, District Judge.

Plaintiffs Rena and Sheldon Gottlieb claim that they won $1 million at Tropicana Casino and Resort[1] ("Tropicana") in Atlantic City, New Jersey, and that defendant Tropicana won't pay. Tropicana denies that plaintiffs won the jackpot. Tropicana has brought a third party complaint against its insurer and two insurance brokers claiming that if it is liable to plaintiffs, the third party defendants are liable over to it based upon a prize indemnity insurance policy. Presently before the court is the motion of Tropicana for summary judgment on all counts of the complaint.

We may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review all evidence and make all reasonable inferences from the evidence in the light most favor-

---

1. Tropicana was incorrectly designated in the complaint as Tropicana Hotel and Casino.

able to the non-movant. *See Wicker v. Consolidated Rail Corp.,* 142 F.3d 690, 696 (3d Cir.), *cert. denied,* 525 U.S. 1012, 119 S.Ct. 530, 142 L.Ed.2d 440 (1998).[2]

The following facts are uncontested. During the summer of 1999, the Gottliebs, who are Pennsylvania residents, were vacationing at a rented apartment in Atlantic City, New Jersey. On July 24, 1999, after dinner with friends, the Gottliebs visited the Tropicana casino.

Tropicana, a New Jersey corporation that operates a gambling casino in Atlantic City, offers people membership in its "Diamond Club." In order to become a Diamond Club member, an individual must visit a promotional booth in the casino, obtain and fill out an application form, and show identification. There is no charge. The application form lists the individual's name, address, telephone number, and e-mail address, and the information provided is entered into the casino's computer database. Each member receives a Diamond Club card bearing a unique identification number. The member then presents or "swipes" the card in a machine each time he or she plays a game at the casino, and the casino obtains information about the member's gambling habits. The casino's marketing department then uses that information to tailor its promotions.

Ms. Gottlieb was, and had been for a number of years, a member of Tropicana's Diamond Club. Upon entering the casino on July 24, 1999, she immediately went to the Fun House Million Dollar Wheel Promotion ("Million Dollar Wheel") and waited in line for approximately five minutes before it was her turn to play. Diamond Club members were entitled to one free spin of the Million Dollar Wheel each day. As its name suggests, the promotion offered participants the chance to win a grand prize of $1 million. Ms. Gottlieb had played the game several times before. In both New Jersey and Pennsylvania, Tropicana had advertised the Million Dollar Wheel in newspapers, magazines, and with direct mailings, although there is no evidence that the Gottliebs saw any of the advertisements.

Not surprisingly, the parties do not agree as to everything that happened once Ms. Gottlieb started play. However, they do agree that she presented her Diamond Club card, a casino operator swiped it through the card reader, she pressed a button to activate the wheel, and the Million Dollar Wheel began spinning. Ms. Gottlieb contends that the wheel landed on the $1 million grand prize, but that when it did so, the casino attendant immediately swiped another card through the machine, reactivated the wheel, and then the wheel landed on a prize of two show tickets. Tropicana avers that the wheel simply landed on the lesser prize. The casino says the wheel never landed on $1 million, and the attendant never intervened and reactivated the wheel.

I.

■ Tropicana has moved for summary judgment on Count I of the complaint, a claim for breach of contract. According to Tropicana, it is well established under New Jersey law that participation in a promotion such as the Million Dollar Wheel cannot constitute consideration that would support the formation of an enforceable contract. On the other hand, plaintiff argues that the law of Pennsylvania applies where participation in a promotion such as the instant one is sufficient consideration to form a binding contract.

■ In a diversity action such as this one, we apply the choice of law rules of the forum state, in this case Pennsylvania, in determining which state's substantive law

---

**2.** We have reviewed Tropicana's uncontested motion for summary judgment against Sheldon Gottlieb, M.D., on Counts I, II, III, and IV, and find that it has merit since it was Rena Gottlieb and not her husband who participated in the game. We will grant the motion. Count V, a consumer fraud claim pursuant to New Jersey law, has been voluntarily dismissed by the plaintiff.

will be applied. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.,* 859 F.2d 266, 269 (3d Cir.1988). Under Pennsylvania law, we must determine whether any conflict between the laws of the relevant states is a false conflict. *See LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir.1996); *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 855–56 (1970). If the conflict is real, we proceed to determine which forum has the greater interest, considering the qualitative contacts of the states, the parties and the controversy. *See LeJeune,* 85 F.3d at 1071; *Cipolla,* 267 A.2d at 856. Pennsylvania law requires us to apply the law of the state having the most significant relationship with the parties and the incident. *See Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 801, 805–06 (1964). Before beginning any conflicts of law analyses, however, we must first determine whether there is any conflict between the laws of the two jurisdictions.

■■■ Under both Pennsylvania and New Jersey law, adequate consideration is necessary in order to form an enforceable contract. *See Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.,* 93 N.J. 153, 459 A.2d 1163, 1171 (1983); *Stelmack v. Glen Alden Coal Co.,* 339 Pa. 410, 413–14, 14 A.2d 127 (1940). Consideration is a bargained for exchange, and it may take the form of either a detriment to the promisee or a benefit to the promisor. *See Continental Bank,* 459 A.2d at 1172; *Stelmack,* 339 Pa. at 414, 14 A.2d at 128.

In support of its contention that New Jersey law holds that no valid consideration exists when a person participates in a promotion, Tropicana cites only one case, a 1985 unpublished transcript of a ruling of the Superior Court of New Jersey. There, the Resorts International Hotel, Inc., a licensed casino operator in New Jersey, sued the New Jersey Division of Gaming Enforcement seeking a declaratory judgment that three promotions it was conducting, a gin rummy tournament and two stock market games, did not violate New Jersey law. *See Resorts Int'l Hotel, Inc. v. New Jersey Div. of Gaming Enforcement,* No. L39436–85, slip op. (N.J.Super. Ct. Law Div., Atlantic Co. Oct. 25, 1985). The question before the court was whether "something of value" passed from the player to the casino, making the promotions illegal gambling in violation of New Jersey law.[3] The court did not determine whether a contract had been formed. It did observe, however, that in the past the presence of only "minute consideration" made a promotion illegal gambling under New Jersey law. *Id.* at 11. Over time, though, the scope of "something of value" had been restricted and "strictly defined." *Id.* at 12. In other words, "something of value" requires more than the minimum consideration that would support the formation of a contract. The court concluded that nothing "of value" had passed from player to casino in the course of the three promotions. *Id.* at 13. It did not decide, as Tropicana contends, that participation in a promotion cannot constitute adequate consideration for a contract.

We find the decision of the New Jersey Supreme Court in *Lucky Calendar Co. v. Cohen,* 19 N.J. 399, 117 A.2d 487 (1955), *op. adhered to on reh'g,* 20 N.J. 451, 120 A.2d 107 (1956), to be on point. There, an advertising company brought a declaratory judgment action against the Camden County prosecutor, seeking a determination that its promotional advertisement campaign for Acme Super Markets did not violate New Jersey's Lottery Act. The centerpiece of the campaign was a calendar

---

**3.** According to the court, New Jersey law defined "something of value" as "any money or property, any token, object or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." *Id.* at 12 (citing N.J. Stat. Ann. § 2C:37–1(d)).

that had Acme coupons bordering it, which was distributed by mass mailings. *See Lucky Calendar*, 117 A.2d at 489–90. The calendar contained an explanation of the "Lucky Calendar Prize Contest." Entrants had the opportunity to win prizes in monthly drawings. All they had to do to enter was tear the entry form off of the calendar, enter a name, address, and phone number, and have the form deposited in a box at any Acme store. There was no charge, and they were not required to be present for the drawing. *See id.* at 490.

The question in *Lucky Calendar* was whether there had been consideration for participation in the drawings. The Supreme Court of New Jersey noted that, assuming consideration was required in order for something to qualify as an illegal lottery under the Lottery Act, it need only be the minimum consideration that is necessary to form a contract. *See id.* at 495. It explained:

> [T]he consideration in a lottery, as in any form of simple contract, need not be money or the promise of money. Nor need it be of intrinsic value; "a rose, a hawk or a peppercorn" will suffice, provided it is what is asked for by the promisor and is not illegal . . . . Whether a "peppercorn" or the filling in and delivering of a coupon is sufficient consideration for a promise depends only on whether it was the requested detriment to the promisee induced by the promise. That is consideration which is regarded as such by the parties.

*Id.* (citing *Williston on Contracts* (rev. ed.1936), §§ 100 n. 8 and 115).[4]

The court determined that consideration was present "both in the form of a detriment or inconvenience to the promisee at the request of the promisor and of a benefit to the promisor." *Id.* "Completing the coupon and arranging for the deposit of it in the box" at the store was the detriment to the promisee, and the "increase in volume of business" was the benefit to the promisor and its customer, the owner of the Acme stores. *Id.* at 496. As the court pointed out, "The motives of the plaintiff and its customer [in offering the Lucky Calendar Prize Contest] . . . are in nowise altruistic." *Id.*

In *Cobaugh v. Klick–Lewis, Inc.*, 385 Pa.Super. 587, 561 A.2d 1248, (1989), the Superior Court of Pennsylvania decided that there was adequate consideration to form a binding contract where a golfer, who was participating in a tournament, shot a hole-in-one after seeing a contest announcement offering a new car to anyone who could ace the particular hole. *See Cobaugh*, 561 A.2d at 1249–50. The court noted that the promisor benefitted from the publicity of the promotional advertising, and the golfer performed an act that he was under no legal obligation to perform. *See id.* at 1250.

■ The laws of New Jersey and Pennsylvania similarly hold that the minimal detriment to a participant in a promotional contest is sufficient consideration for a valid contract. As there is no conflict between the laws of the two states, we need not engage in any conflict of laws analysis. It simply does not matter which law we apply.

Ms. Gottlieb had to go to the casino to participate in the promotion. She had to wait in line to spin the wheel. By presenting her Diamond Club card to the casino attendant and allowing it to be swiped into the casino's machine, she was permitting the casino to gather information about her gambling habits. Additionally, by participating in the game, she was a part of the entertainment that casinos, by their very nature, are designed to offer to all of those present. All of these detriments to Ms. Gottlieb were "the requested detriment[s] to the promisee induced by the promise" of Tropicana to offer her a chance to win $1

---

4. The legislature of New Jersey has repealed the Lottery Act that was in effect at the time of this case.

million. *Lucky Calendar*, 117 A.2d at 495. Tropicana's motives in offering the promotion were "in nowise altruistic." *Id.* at 496. It offered the promotion in order to generate patronage of and excitement within the casino. In short, Ms. Gottlieb provided adequate consideration to form a contract with Tropicana.

■ Tropicana alternately argues that even if there was consideration here, the agreement was illegal, and thus unenforceable. As Tropicana has taken the position that New Jersey substantive law applies to this case, we will address its contention under that state's laws.

The New Jersey Criminal Code makes it an offense to conduct an illegal lottery, which it defines as follows:

> "Lottery" means an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.

N.J. Stat. Ann. § 2C:37–1(h). The code defines "something of value" as:

> any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge. This definition, however, does not include any form of promise involving extension of a privilege of playing at a game without charge on a mechanical or electronic amusement device, other than a slot machine as an award

for the attainment of a certain score on that device.

*Id.* § 2C:37–1(d).

In 1983, the New Jersey Casino Control Commission asked the Attorney General of the State of New Jersey for his office's opinion about the legality of certain casino promotion activities, including "promotions within the casinos themselves, by which tickets are distributed free to all who wish to participate in drawings or other activities." Office of the Attorney General of the State of New Jersey, Formal Opinion No. 6–1983, 1983 N.J. AG Lexis 2 at *1 (June 1, 1983). In response, the Attorney General issued a formal opinion in which he analyzed the meaning of "something of value," N.J. Stat. Ann. §§ 2C:37–1(d), quoted above, and concluded that the "legislative intent was to exclude from the statutory elements comprising the gambling offense the sort of personal inconvenience which will constitute consideration sufficient to support a contract." *Id.* at *4. We give substantial weight to this opinion because the state Attorney General is integrally involved in the administration of the Casino Control Act, N.J. Stat. Ann. §§ 5:12–1, *et seq.*, and the enforcement of gambling offenses in the state. *See Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 389 A.2d 465, 472–73 (1978); *see also* N.J. Stat. Ann. §§ 5:12–55, 76, 77 and §§ 2A:158–4, 52:17B–107.

Looking to the language of the statute and weighing the opinion of the Attorney General of New Jersey, we conclude that Ms. Gottlieb did not pay or agree to pay "something of value" for the chance to participate in the Million Dollar Wheel promotion. N.J. Stat. Ann. § 2C:37–1(d). Thus, the contract she entered into with Tropicana is not an illegal lottery under the New Jersey Criminal Code, N.J. Stat. Ann. § 2C:37–1(h), and is enforceable.

■ Tropicana further challenges Ms. Gottlieb's breach of contract claim on the grounds that it is clear as a matter of law that she did not win the $1 million prize. We need not spend a great deal of time on

this argument. Tropicana points to computer records in support of its position that Ms. Gottlieb did not win the grand prize. Ms. Gottlieb relies in part on her own testimony and the testimony of her husband, who witnessed her spin˚ of the promotional wheel. It is for the jury, and not for the court, to resolve this factual dispute.

Tropicana's motion for summary judgment against Ms. Gottlieb on Count I of the complaint will be denied.

## II.

■ Tropicana next moves for summary judgment on Counts II and III, claims for misrepresentation, and fraud and deceit, respectively. Plaintiffs allege that "Defendant represented to Plaintiffs that if Plaintiffs patronized its casino and spun the Promotion wheel and the wheel landed on the One Million Dollar ($1,000,-000.00) symbol, Plaintiff would win One Million Dollars ($1,000,000.00)." Compl. ¶ 23; *see also* Compl. ¶ 30. Tropicana contends that these claims fail for lack of evidence of any reliance and that there is no falsity because Ms., Gottlieb could not have won the $1 million.

We disagree with defendant about the lack of reliance. There is no dispute that Ms. Gottlieb went to the casino, waited in line, presented her card to the attendant, and spun the wheel, all of which were required by Tropicana in order to have a chance to win the million dollar prize. Such evidence is sufficient proof of reliance to survive summary judgment.

Tropicana argues that since Ms. Gottlieb did not win the grand prize, she cannot prove the element of falsity to support her misrepresentation and fraud claims. However, Ms. Gottlieb has certainly come forward with enough evidence to create a genuine issue of material fact about wheth-

er or not she won. The factual dispute between the parties will have to be decided by the jury.

Tropicana's motion for summary judgment against Ms. Gottlieb on Counts II and III will be denied.

## III.

■ Count IV is a claim pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. Ann. §§ 201–1, *et seq.* Tropicana argues that Ms. Gottlieb does not have standing to pursue her claim.

The UTPCPL provides a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act." Pa. Stat. Ann. tit. 73, § 201–9 .2(a). Plaintiff has not addressed whether she qualifies as a purchaser or lessor.[5]

The UTPCPL does not define the terms "purchase" or "lease." The general rules of statutory construction adopted by the General Assembly of Pennsylvania provide that "[w]ords and phrases shall be construed ... according to their common and approved usage." 1 Pa. Cons.Stat. Ann. § 1903(a). Webster's Dictionary defines "purchase" as "[t]o obtain in exchange for money or its equivalent: BUY ..." Webster's II New College Dictionary 899 (1995). "Lease" means "[t]o occupy or use" under "[a] contract granting occupation or use of property during a certain period in exchange for a specified rent." *Id.* at 625. Ms. Gottlieb did not purchase or lease anything, in the ordinary sense of those words. She did not provide Tropica-

**5.** She has cited to *Commonwealth by Preate v. Watson & Hughey Co.*, 128 Pa.Cmwlth. 484, 563 A.2d 1276 (1989), but that case is not helpful to her. There, the plaintiff was the Attorney General of the Commonwealth of Pennsylvania, who sued under a provision of the UTPCPL that specifically provided for actions by the Attorney General. *See* Pa. Stat. Ann. tit. 73, § 201–4.

na with any money in order to spin the promotional wheel, and the consideration she provided was not an equivalent of money. Thus, she does not meet the statutory requirement to pursue a claim under the UTPCPL. *See Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63, 65 (3d Cir.1994). As a result, we need not reach the question of whether the UTPCPL applies where the allegedly illegal conduct occurred outside of Pennsylvania.

The motion of Tropicana for summary judgment on Count IV will be granted.

### IV.

In conclusion, the motion of Tropicana for summary judgment will be granted against Sheldon Gottlieb, M.D. on all counts and against Rena Gottlieb on Count IV, and otherwise it will be denied.

### *ORDER*

AND NOW, this 5th day of July, 2000, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Tropicana Casino and Resort, incorrectly denominated in the complaint as "Tropicana Hotel and Casino," for summary judgment against plaintiff Sheldon Gottlieb, M.D. on all counts of the complaint is GRANTED;

(2) judgment is entered in favor of defendant Tropicana Casino and Resort, incorrectly denominated in the complaint as "Tropicana Hotel and Casino," and against plaintiff Sheldon Gottlieb, M.D. on all counts of the complaint;

(3) the motion of defendant Tropicana Casino and Resort, incorrectly denominated in the complaint as "Tropicana Hotel and Casino," for summary judgment against plaintiff Rena Gottlieb on Count IV of the complaint is GRANTED. The motion is otherwise DENIED; and

(4) judgment is entered in favor of defendant Tropicana Casino and Resort, incorrectly denominated in the complaint as "Tropicana Hotel and Casino," and against plaintiff Rena Gottlieb on Count IV of the complaint.