Michael A. STEINBERG, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–59 C.

United States Court of Federal Claims.

Nov. 24, 2009.

438

Michael A. Steinberg, Tampa, FL, pro se.

Cameron Cohick, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

*OPINION AND ORDER*

HEWITT, Chief Judge.

Before the court is a Complaint, filed by plaintiff, Mr. Michael A. Steinberg (plaintiff or Mr. Steinberg), on February 2, 2009, asserting breach of contract against the government (government, United States or defendant) on the grounds of promissory estoppel. Compl. ¶ 2. Plaintiff seeks to recover travel costs incurred during his trip to Washington, DC, to attend the 2009 presidential inauguration ceremonies. Pl.'s Compl. ¶ 26. On April 3, 2009, defendant moved to dismiss Mr. Steinberg's Complaint on the grounds that this court lacked jurisdiction to hear a claim of promissory estoppel. Mr. Steinberg submitted a Motion to Allow Plaintiff to Amend Complaint (plaintiff's Motion or Pl.'s Mot.), and

attached an Amended Complaint (Amended Complaint or Am. Compl.). Plaintiff's Motion and Amended Complaint were filed by leave of the court on April 29, 2009. Defendant filed its Opposition to Motion to Allow Plaintiff to Amend Complaint, and, in the Alternative, Motion to Dismiss (defendant's Motion or Def.'s Mot.) on May 18, 2009. Plaintiff filed a Response to Defendant's Motion to Dismiss (plaintiff's Response or Pl.'s Resp.) on August 6, 2009. Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (defendant's Reply or Def.'s Reply) was filed August 6, 2009.

I. Background

The following facts are taken from the Amended Complaint.[1] The United States Congress established the Joint Congressional Committee on Inaugural Ceremonies (JCCIC) to coordinate and plan the inauguration of the President-elect. Am. Compl. ¶ 7. Congress appropriated funds to pay for the swearing-in ceremony and to staff events connected with the ceremony. *Id.* ¶ 8.

After the election of President Obama, the JCCIC announced that it would distribute, to the general public, approximately 240,000 complimentary tickets to view the inauguration ceremonies. *Id.* ¶ 9. These tickets were available at no charge and interested parties could obtain tickets by contacting their Congressperson. *See* Pl.'s Mot. 3. Mr. Steinberg obtained two tickets from his Congressman for admission to the "Blue Section" of the reserved viewing area. Am. Compl. ¶ 13. After obtaining the tickets, Mr. Steinberg traveled to Washington, DC to attend the inauguration and incurred travel expenses. *Id.* ¶ 12.

Mr. Steinberg and his guest arrived at the designated "Blue Section" several hours before the inauguration ceremonies were scheduled to begin. *Id.* ¶ 14. They stood in line to enter into the designated "Blue Section,"

---

1. In Defendant's Opposition to Motion to Allow Plaintiff to Amend Complaint, and, in the Alternative, Motion to Dismiss (defendant's Motion or Def.'s Mot.) defendant states that it "does not admit the accuracy of Mr. Steinberg's allegations, but states them for purposes of this opposi-

tion and motion." Def.'s Mot. 3 n. 1. The court assumes that defendant means by its use of the term "states" that defendant treats Mr. Steinberg's factual allegations as true for the purpose of its Motion.

but were eventually refused admittance. *Id.* ¶¶ 15–16. Plaintiff asserts that he was never told by the JCCIC that there was a possibility that he and his guest might not be admitted into the designated viewing section. *Id.* ¶ 17.

Mr. Steinberg asserts that the JCCIC knew that many ticket holders would be unable to be admitted to the inauguration ceremonies and that the JCCIC had a contractual duty to advise him of this fact publicly before he incurred the expense of traveling to Washington. *Id.* ¶ 22. Plaintiff asserts that if the JCCIC had advised him that many ticket holders would not be admitted to the inauguration ceremonies, he could have made an educated decision whether to incur traveling expenses. *Id.* Plaintiff asserts that the JCCIC breached a contractual duty it owed to him by failing to disclose known facts, which plaintiff detrimentally relied on and which defendant knew or should have known would be material to plaintiff in determining whether to incur travel expenses. *Id.* ¶¶ 23, 25.

Plaintiff's Complaint asserts that he is bringing suit "for breach of contract, under the theory of Promissory Estoppel." Compl. ¶ 2. Plaintiff revised this statement in his Amended Complaint to read, "This is an action for breach of contract." Am. Compl.

¶ 2. However, plaintiff's Complaint and plaintiff's Amended Complaint are substantially the same.[2]

Plaintiff's Amended Complaint suffers from the fundamental defect, that although Mr. Steinberg has re-labeled his promissory estoppel claim as a claim for breach of contract, Am. Compl. ¶ 2, his factual assertions remain the same in substance. For the following reasons, defendant's Motion is GRANTED and plaintiff's claim is DISMISSED.

## II. Legal Standards

### A. Jurisdiction

The jurisdiction of the United States Court of Federal Claims is set forth in the Tucker Act, 28 U.S.C. § 1491 (2006). This court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." *Id.* § 1491(a)(1).

The Tucker Act provides the waiver of sovereign immunity necessary to sue the United States for money damages, but the plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating

---

2. There are four differences between plaintiff's Complaint (Complaint or Compl.) and plaintiff's Amended Complaint (Amended Complaint or Am. Compl.). Each is noted below.

In paragraph 2 the emphasized text was deleted from the Amended Complaint. Plaintiff's Complaint asserts, "This is an action for breach of contract, *under the theory of Promissory Estoppel.*" Compl. ¶ 2 (emphasis added). Plaintiff's Amended Complaint asserts, "This is an action for breach of contract." Am. Compl. ¶ 2.

In paragraph 8 the emphasized text was added to the Amended Complaint. Plaintiff's Complaint asserts, "The United States Congress appropriated funds to pay for the swearing-in ceremony and for staffing events around the ceremony." Compl. ¶ 8. Plaintiff's Amended Complaint asserts *"As part of the Appropriations Act,* The United States Congress appropriated funds to pay for the swearing-in ceremony and for staffing events around the ceremony. *The monies appropriated were implicitly authorized to be used to pay damages for breach of contract(s) by the committee in furtherance of its duties."* Am. Compl. ¶ 8 (emphasis added).

In paragraph 25 certain emphasized text was deleted from the Complaint and different text was added to the Amended Complaint. Plaintiff's Complaint asserts, "Plaintiff detrimentally relied on Defendant's *promise* to admit him and a guest into a designated section for the holders of aforesaid tickets, *and equity dictates that Defendant be liable to the Plaintiff for the costs incurred by Plaintiff,* which were foreseeable by Defendant, and which Plaintiff would not have incurred but for the Defendant's promise." Compl. ¶ 25 (emphasis added). Plaintiff's Amended Complaint asserts, "Plaintiff detrimentally relied on Defendant's *offer* to admit him and a guest into a designated section for the holders of aforesaid tickets, *by incurring expenses to travel to Washington, D.C.,* which were foreseeable by Defendant, and which Plaintiff would not have incurred but for the Defendant's offer." Am. Compl. ¶ 25 (emphasis added).

Plaintiff defines and abbreviates "Joint Congressional Committee on Inaugural Ceremonies" to "JCCIC" in paragraph 9 of the Complaint. Compl. ¶ 9. In the Amended Complaint, plaintiff defines and shortens the same term earlier, in paragraph 5. Am. Compl. ¶ 5.

source within a contract, regulation, statute, or constitutional provision itself, in order for the case to proceed. *See United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). As stated by the United States Court of Appeals for the Federal Circuit, the alleged source of the substantive right to money damages must be "*reasonably amenable*" to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' ... a *fair inference* will do." *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed.Cir.2005) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003)).

 The burden of proof for establishing jurisdiction is borne by the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Russell v. United States*, 78 Fed.Cl. 281, 285 (2007). If defendant challenges jurisdictional facts, plaintiff must support them with "competent proof." *McNutt*, 298 U.S. at 189, 56 S.Ct. 780. The plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). Jurisdiction is a threshold matter and a case can proceed no further if the court lacks jurisdiction to hear it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

#### B. Motion to Dismiss

 Defendant moves to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). Def.'s Mot. 1. Rule 12(b)(1) provides for dismissal of a claim based on a "lack of subject-matter jurisdiction." RCFC 12(b)(1). Rule 12(b)(6) provides for dismissal of a claim based on a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). The Federal Circuit has enumerated three grounds on which the government "might file a motion to dismiss in a Tucker Act case: (1) lack of subject matter jurisdiction due to the lack of a money-mandating source; (2) failure to state a claim upon which relief can be grant-

ed due to lack of a money-mandating source; and (3) failure to state a claim upon which relief can be granted because the plaintiff is ultimately not entitled to recover money damages under the statute." *Greenlee County v. United States*, 487 F.3d 871, 876 (Fed.Cir.2007) (citing *Fisher*, 402 F.3d at 1172–73). The Federal Circuit reiterated that this court is to resolve motions to dismiss under grounds one and two "by a 'single step' at the outset of the case and 'the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.' " *Id.* (quoting *Fisher*, 402 F.3d at 1173).

 Whether a plaintiff has alleged facts sufficient to make out a case is a separate inquiry from whether a plaintiff "has a money-mandating source on which to base his cause of action." *Adair v. United States*, 497 F.3d 1244, 1251 (Fed.Cir.2007) (citing *Fisher*, 402 F.3d at 1173). In *Adair*, the Federal Circuit further explained the proper analysis for 12(b)(1) and 12(b)(6) motions:

> If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

*Id.* (internal citations omitted). Failure to plead facts that identify a source mandating the payment of money damages to a plaintiff deprives the court of jurisdiction over the subject matter. *Fisher*, 402 F.3d at 1172.

 When evaluating a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989). In rendering a decision on a motion to dismiss, the court must presume that un-

disputed factual allegations in the complaint are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds,* 846 F.2d at 747. "If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute." *Reynolds,* 846 F.2d at 747 (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

 The Supreme Court has recognized that the pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers.[3] *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). "This latitude, however, does not relieve a pro se plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed. Appx. 860 (Fed.Cir.2004) (Table). "However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007) (quoting *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir.2002)). Further, even if the litigant is appearing pro se, "there is no duty on the part of the trial court to create a claim which appellant has not spelled out in his pleading." *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (internal quotation and punctuation marks omitted); *Lowe v. United States,* 80 Fed.Cl. 420, 421 (2008). "The fact that [a plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures...." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir. 1995).

## C. Promissory Estoppel

 Promissory estoppel requires "[a] promise which the promisor should reason-

ably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance...." Restatement (Second) of Contracts (Restatement) § 90(1) (1981). This promise "is binding if injustice can be avoided only by enforcement of the promise." *Id.* In order to prevail on a claim of promissory estoppel, a party

> must prove, first, that there was a promise or representation made, second, that the promise or representation was relied upon by the party asserting the estoppel in such a manner as to change his position for the worse, and, third, that the promisee's reliance was reasonable and should have been reasonably expected by the promisor.

*Law Mathematics & Tech., Inc. v. United States,* 779 F.2d 675, 678 (Fed.Cir.1985). Once these elements are met, the promise will be binding if justice so requires. *See* Restatement § 90(1).

 The jurisdiction of this court "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States (Hercules),* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). Promissory estoppel however, requires the court find an implied-in-law contract, a claim for which the United States has not waived its sovereign immunity. *Lion Raisins, Inc. v. United States,* 54 Fed.Cl. 427, 431 (2002) (quoting *Hercules,* 516 U.S. at 423, 116 S.Ct. 981). Accordingly, this court has no jurisdiction over promissory estoppel claims. *Shoshone Indian Tribe of the Wind River Reservation v. United States (Shoshone),* 58 Fed.Cl. 542, 546 (2003); *see De Archibold v. United States,* 57 Fed.Cl. 29, 32 (2003) (citing *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976) ("This court, of course has no jurisdiction to render judgment against the United States based upon a contract implied in law.")).

---

3. The court notes that, although appearing pro se, plaintiff is a lawyer and is a member in good standing of the Florida bar. "Even a skilled lawyer who represents himself is at a disadvantage in contested litigation." *Kay v. Ehrler,* 499 U.S. 432, 437, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). "He is deprived of the judgment of an independent third party in framing the theory of the case ... and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.*

#### D. Breach of Contract

To recover for a breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising under the contract, (3) a breach of that duty, and (4) damages caused by the breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed.Cir.1989). To establish a valid contract with the government, a party must allege and establish: (1) mutuality of intent, (2) consideration, (3) lack of ambiguity in the offer and acceptance and (4) that the government official whose conduct the contractor relies upon has actual authority to bind the government in contract. *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed.Cir.2003). An implied-in-fact contract has the same requirements as an express contract, but an implied-in-fact contract is founded upon the meeting of the minds and the mutual understanding of the parties. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed.Cir.2003) (citing *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)).

"As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent." *Anderson*, 344 F.3d at 1353 (citing Restatement § 18 (1981)). To establish mutual intent to contract, a party must demonstrate the existence of an offer and acceptance of the offer by objective evidence. *See Estate of Bogley v. United States*, 206 Ct.Cl. 695, 514 F.2d 1027, 1032 (1975); Restatement § 22(1) ("The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties."). After an offer is made, there must be acceptance: "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement § 50(1). There must also be a "[l]ack of ambiguity in [the] offer and acceptance ... if a contract is to exist". *Nevin v. United States*, 43 Fed.Cl. 151, 154 (1999) (citing *Petrini v. United States*, 19 Cl.Ct. 41, 45 (1989)).

Valid contract formation also requires consideration. *Id.* § 17(1). "[A]ny performance which is bargained for is consideration." *Id.* § 72. "To constitute consideration, a performance or a return promise must be bargained for." *Id.* § 71(1). "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* § 71(2).

To recover for a breach of a contract with the government, plaintiff must establish "that the officer whose conduct is relied upon had actual authority to bind the government." *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed.Cir.1984). Agents with express authority and implied actual authority can bind the government; apparent authority, however, is insufficient. *H. Landau & Co. v. United States (H. Landau)*, 886 F.2d 322, 324 (Fed.Cir.1989). In general, a government official has implied authority when "such authority is considered to be an integral part of the duties assigned to a government employee." *Id.*

### III. Discussion

#### A. Promissory Estoppel

In his Amended Complaint, plaintiff asserts that he "detrimentally relied on [d]efendant's offer ... by incurring expenses to travel to Washington, D.C., which were foreseeable by [d]efendant, and which [Mr. Steinberg] would not have incurred but for the [d]efendant's offer." Am. Compl. ¶ 25. "Detrimental reliance" is an element of a claim of promissory estoppel, a contract implied in law, but is not an element of a contract in fact. Although plaintiff amended his complaint to read, "This is an action for breach of contract," *id.* ¶ 2, the substance of plaintiff's Amended Complaint asserts the elements necessary to establish promissory estoppel rather than the elements necessary for breach of contract. This court has no jurisdiction to hear a claim for promissory estoppel, *Shoshone*, 58 Fed.Cl. at 546, and to the extent plaintiff substantively asserts the elements for promissory estoppel, dismissal for lack of jurisdiction under 12(b)(1) is appropriate, *see Arakaki v. United States*, 71 Fed.Cl. 509, 521 n. 7 (2006).

### B. Breach of Contract

Mr. Steinberg's Amended Complaint fails to allege the elements of a valid contract with the United States.[4]

#### 1. Mutuality of Intent to Contract

Mr. Steinberg fails to assert that there was an objective manifestation of mutual assent on the part of the JCCIC or of any individual member of Congress sufficient to establish a meeting of the minds. *See Anderson,* 344 F.3d at 1353 (requiring mutuality of intent to establish a contract with the government). Mr. Steinberg alleges that he was owed "contractual duties" by the JCCIC and by defendant, Am. Compl. ¶¶ 22, 23, 26, but Mr. Steinberg fails to assert that there was a meeting of the minds or mutual intent on the part of the parties to enter into a contract.

#### 2. Consideration

Mr. Steinberg asserts that "those persons offered tickets would have to personally pick up the tickets from his or her Congressperson's office." *Id.* ¶ 11. More specifically, in plaintiff's Motion, he asserts that "pick[ing] up the ticket in person was mandatory and thus acted as consideration in order to receive the ticket." Pl.'s Mot. 2. In rendering a decision on a motion to dismiss, the court must presume that undisputed factual allegations in the complaint are true. *Miree,* 433 U.S. at 27 n. 2, 97 S.Ct. 2490. Here, however, the factual allegation supporting plaintiff's claim that such "consideration" was required is contradicted by plaintiff himself. Even if a requirement of "pick[ing] up the ticket" in person could somehow be viewed as consideration, the "mandatory" requirement on which Mr. Steinberg relies does not exist. Attached as an exhibit to the Amended Complaint was an e-mail that Mr. Steinberg received from Cristin Datch, Staff Assistant to Congressman Bilirakis, which states that *"if someone will be picking up tickets on your behalf, we must have his/her name and telephone number in order to verify his/her information when he/she arrives in our office. Therefore, if that is the case, please respond to this email with his/her contact information."* Am. Compl. Ex. B. Mr. Steinberg was not required to pick up his free ticket in person. Picking up the tickets in person could not serve as consideration necessary to establish a contract.

Nor does the court find that Mr. Steinberg's traveling expenses constitute consideration. Plaintiff defines consideration as "a detriment to the promisee or a benefit to the promisor," Pl.'s Mot. 3, and asserts that the cost of traveling to DC was a detriment to him and therefore constitutes consideration. *Id.* at 4. A detriment to one party may serve as consideration, but only if such detriment is bargained for. *See* Restatement § 72. Plaintiff fails to assert that his detriment, the cost of travel, was bargained for or sought by the government in any way. *See* Pl.'s Mot. 4.

Plaintiff also suggests that his attendance at the inauguration ceremonies is analogous to the activities of a plaintiff who participated in the promotion of a casino. Pl.'s Mot. 3 ("The process was similar to a contest, with winners being selected.") (citing *Gottlieb v. Tropicana Hotel & Casino (Gottlieb),* 109 F.Supp.2d 324 (E.D.Pa.2000)). In *Gottlieb,* the plaintiff was required to report information about her gambling habits to the casino and became "a part of the entertainment" at the casino. *Gottlieb,* 109 F.Supp.2d at 329. The court in *Gottlieb* concluded that the casino "offered the promotion in order to generate patronage of and excitement within the casino." *Id.* at 330. The plaintiff in *Gottlieb* established bargained-for consideration and survived a motion for summary judgment. *Id.*

The court finds inapposite plaintiff's comparison of a presidential inauguration to a

---

4. Plaintiff asserts that Congress appropriated funds to pay for the inauguration ceremonies, and concludes that such monies "were implicitly authorized to be used to pay damages for breach of contract(s)." Am. Compl. ¶ 8. Plaintiff asserts that if he had purchased the viewing tickets from the JCCIC, it would have created a right to damages for breach of contract. Pl.'s Mot. 2. Whether this is true is outside the scope of this suit. It is undisputed that plaintiff did not pay for his ticket.

casino's business effort to attract customers in an attempt to turn a profit. Throngs of people traveled to Washington for the inauguration. Plaintiff notes that "[p]ersons who desired the tickets exceeded the number available." Pl.'s Mot. 3. A message on plaintiff's tickets warned the holders to "arrive early due to large crowds." Am. Compl. Ex. C. Unlike the proprietor of the casino in *Gottlieb,* the government did not bargain for Mr. Steinberg's attendance. The United States did not receive a bargained-for benefit from the spectators who attended the inauguration ceremonies.

Plaintiff asserts that "the JCCIC received an intangible benefit of promoting the Inauguration by means of the complimentary tickets offered through the various mediums." Pl.'s Mot. 3. Plaintiff does not explain what such an intangible benefit might be. The government did not attempt to make money from the inauguration, nor did it need to attract participants as the casino in *Gottlieb* did. In determining whether there was consideration, the question is not whether one party received a benefit (tangible or otherwise), but whether the benefit was bargained for. *See* Restatement § 71. If the benefit was not bargained for, and here it was not, it cannot constitute consideration necessary to support a contract. *See id.* § 71(1). The government did not bargain for the attendance of plaintiff or others at the inauguration ceremonies. Because the inauguration is unlike the business in *Gottlieb,* the court finds that there was no bargained-for benefit, tangible or intangible, that could serve as consideration.

3. Ambiguity in the Offer and Acceptance

Mr. Steinberg fails to articulate a clear, unambiguous offer and acceptance between himself and the United States. Plaintiff refers to "Defendant's offer to admit him and a guest into [the] designated section." Am. Compl. ¶ 25. It is unclear from his filing who Mr. Steinberg believes made this offer. In his Amended Complaint, plaintiff states that defendant is the United States of America and that the JCCIC is defendant's agent. *Id.* ¶¶ 4, 5. Plaintiff further asserts that it is the JCCIC that owes him a contrac-

tual duty. *Id.* ¶¶ 22, 23, 26 However, plaintiff received his ticket from Congressman Bilirakis. *Id.* ¶¶ 10, 13. It is unclear who made the "offer to admit [plaintiff] and a guest into [the] designated section." *See id.* ¶ 25. Such ambiguity is fatal to the creation of a contract, *see Anderson,* 344 F.3d at 1353, 1355–56, and requires dismissal by this court under RCFC 12(b)(6).

Further ambiguity is found on the face of the ticket itself. The ticket advises the holder, "Please arrive early due to large crowds." Am. Compl. Ex. C. Plaintiff asserts that "the tickets insured Plaintiff a spot in the designated viewing area," if he arrived early. Pl.'s Resp. 3. Defendant asserts that "the most reasonable meaning conveyed by this statement is that crowd size might prevent entry to the viewing area by the ticketholder . . . ." Def.'s Reply 15. There is nothing on the ticket itself that supports one interpretation of the phrase over another interpretation of the phrase. Ambiguity regarding the nature of the offer renders the contract ambiguous and requires dismissal under RCFC 12(b)(6). *See Anderson,* 344 F.3d at 1353, 1355–56.

4. Authorized Agent of the Government

To withstand a motion to dismiss, Mr. Steinberg must allege facts sufficient to show that the government representative who entered into the alleged implied-in-fact contract was a contracting officer or had implied actual authority to bind the government. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1327 (Fed.Cir.1997). Mr. Steinberg alleges that the JCCIC breached its contractual duty, Am. Compl. ¶ 23, but fails to assert that any member of the JCCIC had actual authority to enter into a contract with him on the government's behalf.

More generally, plaintiff fails to allege either that members of the JCCIC or that the Congresspersons who distributed the complimentary tickets had actual authority to enter into contracts with members of the public who received complimentary tickets. Congressman Bilirakis received the tickets from the JCCIC and made the decision to award plaintiff two tickets. *Id.* ¶ 10. Mr. Stein-

berg fails to assert that either Congressman Bilirakis, from whom he received his tickets, or the JCCIC, had actual authority to bind the government to pay damages in connection with the disbursement of complimentary inaugural observation tickets. Actual authority to bind the government is necessary to establish a contract with the government, *see H. Landau*, 886 F.2d at 324, and plaintiff's failure to plead that the government representative who entered into the alleged implied-in-fact contract had actual authority makes dismissal of his case appropriate under RCFC 12(b)(6).

## IV. Conclusion

■ To the extent plaintiff's Amended Complaint is viewed as a claim for relief under the doctrine of promissory estoppel, the claim is dismissed under RCFC 12(b)(1) for want of jurisdiction. To the extent plaintiff's Amended Complaint is viewed as a claim for relief under an express contract or a contract implied in fact, the claim is dismissed for failure to state a claim upon which relief may be granted. *See Adair*, 497 F.3d at 1251. Dismissal pursuant to RCFC 12(b)(6) is appropriate "when the court determines that the facts as asserted do not entitle the claimant to a legal remedy." *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir.2003) (discussing RCFC 12(b)(4), the predecessor to RCFC 12(b)(6)). Mr. Steinberg has failed to state a claim upon which relief can be granted.

For the reasons set forth above, the court GRANTS defendant's Motion. Because defendant's Motion is GRANTED, the case is DISMISSED and all outstanding motions for relief by plaintiff are MOOT. The Clerk of Court shall enter judgment for defendant. No costs.

IT IS SO ORDERED.